## In re SHOEMAKER.

(Circuit Court of Appeals, Third Circuit. May 8, 1913.)

No. 1,710.

BANKRUPTCY (§ 471*)—ATTACHMENT—INVALIDITY—ATTACHED PROPERTY—DELIVERY TO THE TRUSTEE—CONDITION—PAYMENT OF COSTS.

Where property of a bankrupt was attached within four months before bankruptcy, it was error to require, as a condition of delivery of the attached property to the trustee, that he should pay counsel fees and costs to the attorney for the attaching creditor and costs of the attachment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 873–877; Dec. Dig. § 471.*]

Appeal from the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

In the matter of bankruptcy proceedings of James M. Shoemaker. From a decree requiring a delivery of certain attached property to the trustee on condition that he deposit with the clerk $300, pending determination of an appeal from an order directing certain payments to Paul A. Queen for counsel fees and costs in the attachment proceeding, the trustee appeals. Reversed.

Leon Lauterstein, of New York City, for appellant.

Paul A. Queen, Jr., Harry J. Able, of Frenchtown, N. J., and John A. Hartpence, of Jersey City, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. The facts of this case are as follows:

On April 25, 1912, a judge of a state court in New Jersey granted a writ of attachment against Shoemaker's goods and chattels, and these were duly levied on by the sheriff. On April 26, following the state practice, an official called an auditor was appointed, with authority inter alia to take possession and to sell the attached goods. These were at Milford, N. J., and comprised substantially all the property Shoemaker owned. On May 20, the auditor having meanwhile gone into possession, a petition in bankruptcy was filed in the Southern district of New York, and on May 21 the adjudication was entered. On June 6 a trustee was duly qualified, and on June 7 he demanded the delivery of the attached property, but was refused. On June 13 he petitioned the United States District Court for New Jersey (as a tribunal ancillary to the court in New York), averring that the attachment was void, because it was obtained within the four months period, and that an unincumbered title passed immediately to the trustee by virtue of the adjudication. As the property was physically within the district of New Jersey, he prayed the federal court to order the sheriff and the auditor to surrender possession. June 24 was fixed for the hearing of this petition, and on June 13 due notice thereof was served on the sheriff and on the auditor. Almost

immediately thereafter, on June 15, and without giving notice to the trustee, the auditor made a report to the state court, setting out that several other creditors had applied to share the benefit of the attachment, that he had employed a watchman and caretaker, that no sale had taken place, that the trustee in bankruptcy had demanded possession of the property on June 7, and at that time had notified the auditor of the bankruptcy proceedings, but that the demand had been refused, and that he had been served on June 13 with notice of the order of the United States court; a copy of the order being annexed. He then presented a statement of expenses, aggregating nearly $200, in which were included expenses incurred both before and after the adjudication, and some items also incurred after the trustee's demand. On June 22 the judge of the state court made an ex parte order, which recited the filing of the auditor's report and the fact that the attached goods had not been sold, referred to the bankruptcy proceedings and to the order of the federal court for New Jersey, and then, "on motion of Paul A. Queen, attorney for the plaintiff (in the attachment) and for the auditor," allowed the auditor $195.63 for expenses and $50 for services, and also allowed $150 to Paul A. Queen "for his counsel fees and services as attorney and counsel in said attachment suit,   *   *   *   together with the taxed costs of the plaintiff and applying creditors in said suit, amounting to $77.13." The order also "authorized and directed" the auditor to surrender the property to the trustee; but as the auditor had sold no property, and had no fund in hand to meet the allowances, it was not clear how they were to be paid. Having obtained the ex parte order referred to, the sheriff and the auditor appeared by counsel on June 24 before the District Court at Trenton, and filed an answer to the trustee's petition reciting the proceedings in the state court, appending a statement of the auditor's expenses, which had now increased to $224.03, appending also a copy of the auditor's report to the state court, a copy of the order made by that court, and a copy of a bill of costs claimed by the creditors who had joined in the attachment, entitled "Costs on Discontinuance," which amounted to $77.13, and had been taxed by the clerk of the state court on June 20, also without notice to the trustee. With these papers before him, the District Judge made an order on June 24, reciting his own rule to show cause, granted on June 13, referring also to the proceedings in the state court, and directing that the sheriff and the auditor deliver the attached property to the trustee, but upon this condition:

"And it is further ordered the said William A. Jones, trustee as aforesaid, do pay, as a condition of the delivery of the aforesaid property unto him as hereinbefore provided, at the time of such delivery, unto the said Samuel O. Eddy, auditor as aforesaid, the sum of two hundred and seventy-four dollars and three cents, as and for his compensation and expenses incurred in and about the preservation and protection of said property of said bankrupt for the benefit of his estate to date, together with such further expenses as may be incurred by him in and about such preservation of said property to the time of delivery of such property to the trustee in bankruptcy, as above ordered.

"And it is further ordered that said trustee shall likewise pay unto Paul A. Queen, for his counsel fees and services as attorney and counsel in said

attachment suit, the sum of one hundred and fifty dollars, together with the taxed costs of the plaintiff and applying creditors in said suit, amounting to seventy-seven dollars and thirteen cents, pursuant to the aforesaid order of the said judge of the circuit court of the county of Hunterdon."

On July 1 the trustee appealed to this court from so much of the order as has just been quoted, and the appeal was duly allowed. On July 18 he again petitioned the District Court, averring that the value of the bankrupt's goods exceeded the amount in dispute, deprecating the delay and the increased expense if the property should not be promptly sold, and averring also, that he was wholly without funds, since the bankrupt had owned no other property than the goods attached. For these reasons, he asked to be put into possession, and for an order to sell—

"for the purpose of making sale thereof in accordance with the bankruptcy law, upon the stipulation that the trustee hold out from the proceeds of said sale sufficient moneys to comply with the provisions of said order heretofore made by this court or with the ultimate determination of the Circuit Court of Appeals on appeal taken by your petitioner from said order."

The District Judge declined to make the order, and—apparently to stop further charges—the trustee then agreed in open court to withdraw the appeal taken from so much of the order as allowed the auditor's expenses and compensation, and agreed to pay on these accounts $405.48 out of the first moneys realized from the sale. This agreement was embodied in an order of the District Court dated July 24, in which the further condition was imposed that the trustee, "out of the moneys realized from the sale, * * * deposit with the clerk of this court the sum of $300 pending the determination of the appeal from said order as to the payments directed therein to be made to Paul A. Queen * * *" for counsel fees and costs. The deposit has since been made.

This appeal, therefore, asks only for a review of the order of June 24 so far as it requires the trustee, as a condition precedent to obtaining possession of the property, to pay counsel fees and the costs that were taxed on "discontinuance of attachment." In our opinion, the items thus complained of were improvidently allowed. We say nothing about so much of the order of June 24 as adopted the ex parte allowances made to the auditor by the state court acting in disregard—and apparently in deliberate disregard—of the bankruptcy proceedings. This part of the order has been complied with, and therefore is not now in question; but we do not think that the allowance of counsel fees and taxed costs, as a condition precedent to permitting the trustee to take possession of property to which he had a prima facie title, can be justified by any provision of the Bankruptcy Act to which our attention has been called. The effect of the order is to give these allowances a preference, although a preference could only be justified on the ground that the services rendered were necessary to preserve the estate, and although, apparently at least, the services had no such object, but were rather intended to benefit certain creditors, in whose behalf counsel was engaged and liability for costs was incurred. We do not wish, however, to say anything that may even seem to prejudge the claims. Fuller inquiry may show, perhaps,

that they have some standing against the bankrupt estate, and we shall take care that the order about to be made shall not prejudice any right of the appellees to press their claims against the estate, either as preferred or as general claims, as they may be advised. All we are called upon to decide now is that the trustee should not have been ordered to pay these claims as a condition precedent to obtaining possession of the property.

As already stated, this position is well taken, and accordingly the order appealed from is reversed (but without prejudice, etc., as just stated), with instructions to the District Court to direct its clerk to pay the deposit of $300 to the trustee.